# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT ZIELINSKI,** | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:13-33** |
| v. | : | **(JUDGE MANNION)** |
| **SCHOTT NORTH AMERICA, INC.,** | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

Presently before the court is the defendant's motion to dismiss the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 8). The defendant seeks dismissal of the plaintiff's claims of (1) wrongful denial of benefits under Section 502 of the Employee Retirement Income Security Act ("ERISA") pursuant to 29 U.S.C. §1132; (2) failure to provide plan documents pursuant to 29 U.S.C. §§1024(b)(2) and to 1132(c)(1); and (3) a claim for attorney's fees and costs under 29 U.S.C. §1132(g).[1]

---

[1] Although the defendant's motion to dismiss also includes a claim for breach of fiduciary duty, plaintiff's reply brief notes there "is no separate or distinct request for relief for a breach of fiduciary duty for the Plan overall." (Doc. No. 12). As such, there is no need to discuss any issues related to the breach of fiduciary duty raised in the defendant's motion. (Doc. No. 12)

## I. BACKGROUND

This case arises out of the plaintiff's employment with the defendant corporation that commenced in June 1976. (Doc. No. 1, ¶12). During his employment, the plaintiff participated in the Schott Glass Technologies, Inc. Hourly Employees Retirement Plan ("the Plan"). (Id. ¶8). On June 28, 2005, the plaintiff injured his back while employed by defendant. (Id. ¶13). He was unable to return to work after August 1, 2005, and was sent a letter on January 8, 2007, terminating his employment effective February 1, 2007, pursuant to section 12.12(g) of the United Food and Commercial Workers Local #1776's Collective Bargaining Agreement. (Id. ¶14-15, 34; Doc. No. 2, Exh. B; Doc. No. 12, Exh. 1). The plaintiff received worker's compensation benefits from August 1, 2005, through October 2010. (Doc. No. 1, ¶17).

On October 5, 2010, the plaintiff signed a letter of resignation when he settled the indemnity portion of his workers' compensation claim. (Id. ¶17; Doc. No. 8, Exh. 3). The plaintiff was subsequently awarded Social Security Disability retroactive to June 1, 2007. (Doc. No.1, ¶16). Between December 3, 2010 and August 2, 2011, the plaintiff submitted an application for disability benefits under the Plan, but his application was denied on October 31, 2011. (Id. ¶18-19, 22).

The plan administrator cited three reasons for denying the claim: first, the plaintiff did not qualify as he was not disabled while employed with the defendant pursuant to the Plan's requirements; second, he filed his application for benefits outside of the 60-day window from when he received notice of his Social Security Disability; and third, the plaintiff's resignation letter of October 5, 2010, constituted a waiver of rights to disability (welfare) benefits. (Doc. No. 2, Exh. B). Plaintiff appealed that decision and requested a copy of the Plan and applicable amendments on December 5, 2011. (Id. ¶22). In that same letter, four paragraphs later, the plaintiff also stated: "Once the plan documents are provided, and my client's entire file, my client will be able to verify that [the administrator's] statement is inaccurate." (Doc. No. 2, Exh. E). The defendant provided a copy of the plan and requested amendments on December 16, 2011. (Doc. No. 1, ¶48). The appeal was denied on January 23, 2011, on the same grounds cited in the original decision. (Doc. No. 1, ¶26; Doc. No. 2, Exh. F).

The Plan, attached as an exhibit to plaintiff's complaint, has two specific provisions relating to "disability." (Doc. No. 2, Exh. A). The first defines "disability," in pertinent part, under section 1.1(k) of the Plan:

> The total disability of a Participant by bodily or mental injury or disease so as to be prevented thereby from performing his

> customary or compensable duties for the Employer or engaging in any substantial gainful activity for profit or remuneration; and for which the Participant is eligible for and receiving Social Security disability benefits. *Subject to approval under the terms of the collective bargaining agreement and effective as of the date so negotiated*, Disability shall mean either a disability for which the Participant is eligible for and receiving Social Security disability; or the total disability of a Participant by bodily or mental injury or disease so as to be prevented thereby from performing his customary or compensable duties for the Employer and for whom no equal job is available.

(Id., Exh. A)(emphasis added). The second part of this passage, starting with the words "Subject to the approval under the terms of the collective bargaining agreement...," was never in fact adopted in the collective bargaining agreement, despite being referenced in the plaintiff's complaint. (Doc. No. 1 ¶34; Doc. No. 12, Exh. 1). Therefore, it cannot be relied upon as an alternative definition of disability.

The second relevant reference, under section 5.4(a) of the Plan, details the qualifications required to collect disability benefits. (Doc. No. 2, Exh. A). It reads: "Subject to the provisions of the Plan, a Participant who becomes Disabled *while employed by the Company* shall be eligible to recover his annual pension benefit, determined as of the date of Disability and unreduced for early payment." (Id.)(emphasis added). The Plan also notes the administrator "shall be solely responsible for carrying out the provisions of the

4

Plan" and "shall have the exclusive right to interpret the Plan and decide any matters arising thereunder in connection with the administration of the Plan." (Id.)

The plaintiff alleges to have had contact with a second employee who faced a similar situation. (Doc. No. 3, Exh. H; Doc. No. 12). According to the plaintiff, this employee received Social Security Disability benefits as of April 2007 and was employed by the defendant until April 2008. (Id.). This employee applied for and received disability benefits under the Plan. (Id.).

## II. PROCEDURAL HISTORY

This action was commenced on January 4, 2013 when the plaintiff filed his complaint. (Doc. No. 1). The defendant filed a motion to dismiss on March 8, 2013. (Doc. No. 8). The plaintiff filed an "Answer" to the defense motion to dismiss,[2] along with a brief in opposition, on March 21, 2013. (Doc. No. 10; Doc. No. 11). The defendant filed a reply brief on April 3, 2013. (Doc. No. 12). The case is now ripe for the court's decision.

---

[2]An answer is unnecessary and not an appropriate filing in response to a motion to dismiss in federal court. Rather, the brief in opposition is the proper response.

5

## III. STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)

6

(brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Next, this court must determine the standard of review to apply to the Plan administrator's denial of benefits. In *Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court noted that under ERISA, the *de novo* standard is generally applied unless "the benefit plan gives the

administrator . . .discretionary authority to determine eligibility for benefits." When the administrator has such discretion, the decision is reviewed under the arbitrary and capricious standard. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir 2012). That standard is triggered when a written ERISA plan gives the policy administrator sole authority to control and manage the policy, to administer claims, and resolve questions arising in administration, interpretation and application of the policy. *Id*. An administrator's findings will stand when "they are supported by substantial evidence, which [the Third Circuit] has defined as such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). Conversely, an administrator's decision is "arbitrary and capricious 'if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" *Miller v. American Airlines, Inc.*, 632 F.3d 837, 847 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Although the standard is referred to as both "arbitrary or capricious" and "abuse of discretion," the Third Circuit views them as interchangeable. *Fleisher*, 679 F.3d at 121, fn. 2.

The Plan here is in line with *Fleisher*. It gives the administrator sole discretion and authority to administer, interpret, and decide any matters

8

arising under the Plan. (Doc. No. 2, Exh. A). It also vests "full and complete discretionary authority and control, with respect to the Plan operations and administration," with the administrator. (Id.).

The plaintiff contends a higher level of review is necessary because the defendant both funds and administers the Plan, creating a conflict of interest. A conflict of interest is only one factor to be considered when reviewing whether a plan administrator abused his or her discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008); *Howley v. Mellon Financial Corp*, 625 F.3d 788, 793 (3d Cir. 2010). A conflict does not automatically trigger a higher standard of review. As such, the court will evaluate the Plan administrator's decision for an abuse of discretion, while taking into account the conflict of interest.

**IV. DISCUSSION**

A. The Wrongful Denial of Benefits Under ERISA

"ERISA is a comprehensive statute to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896, 901 (3d Cir. 1995) (internal quotations and

9

citations omitted). In order to accomplish these objectives, §502(a)(1)(B) "creates a civil cause of action for plan participants 'to recover benefits due to him under the terms of his plan.'" *Fleisher*, 679 F.3d at 120 (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)). The statute requires benefit plans to be governed by "written documents and summary plan descriptions." *Unisys*, 58 F.3d at 902.

Turning to the plaintiff's qualification under the Plan's language, only the first sentence of section 1.1(k) applies, as referenced in the plaintiff's complaint. The plaintiff does not contend, nor is there anything in the record, to demonstrate that the language in the second part was adopted through the collective bargaining agreement as required. In fact, the relevant collective bargaining agreement, attached as an exhibit to defendant's reply brief and relied upon in the complaint, did not adopt the alternative definition of "disabled." (Doc. No. 1; Doc. No. 12, Exh. A). As such, the Plan's administrator properly applied the only available definition of "disabled," which is the same definition the plaintiff used in his complaint. (Doc. No. 1, ¶ 20). Under that definition, the plaintiff must be eligible for and ultimately receive Social Security Disability benefits during the time employed by the defendant in order to qualify as disabled. (Doc. No. 1, ¶ 20-21).

The plaintiff admits he was discharged from his job on February 1, 2007 and only became eligible for Social Security Disability benefits retroactively to June 1, 2007, four months after his employment had ended. (Doc. No. 1, ¶15-16). Under the Plan, an individual seeking disability benefits must be "eligible and receiving Social Security benefits" during the time employed with the defendant. (Doc. No. 2, Exh. A). *See Lucent*, 541 F.3d at 255 ("When a plan is clear and unambiguous, a court must determine its meaning as a matter of law without looking at extrinsic evidence."). The defendant was not eligible for or receiving Social Security Disability while employed by the defendant, so he therefore did not qualify under the Plan. (Doc. No. 1,¶14-17). The administrator made the same finding and notified the plaintiff of this determination in December 2011. (Doc. No. 2, Exh. B). Moreover, the plaintiff does not allege any facts that demonstrate how any alleged conflict of interest affected the administrator's application of the plain language of the Plan to his situation. This is not a case where the administrator's interpretation of the plan's language is "so close as to make the conflict of interest a determinative factor." *Fleisher*, 679 F.3d at 120. As such, the wrongful denial of ERISA benefit claim fails.

### B. The Failure to Provide Plan Documents

The plaintiff further contends the defendant failed to provide plan documents as required by 29 U.S.C. §§1024(b)(2) and 1132(c)(1). The relevant provision of 1024(b)(2) states:

> [T]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments *under which the plan is established or operated*.

29 U.S.C. §1024(b)(2) (emphasis added). This court reads the statute's plain language to determine the legislative intent, expressed through the clear and ordinary meaning of the words. *Barnes v. Cohen,* 749 F.2d 1009, 1013 (1984). Assuming a request for my "client's entire file" by the plaintiff would constitute a request for documents, it is unclear whether this request is for "plan documents" or for the plaintiff's personal information. 29 U.S.C. §1024(b)(2); see Gashlin v. Prudential Ins. Co. Of Am. Ret. Sys. for U.S. Employees & Special Agents, 286 F.Supp 2d 407, 423 (D. NJ 2003) ("A plain reading of the Act makes evident that other instruments under which the plan is established or operated refers to documents that govern the pension plan and not the personal information of [former employees]."). The language of the statute requires only the disclosure of plan documents, not the personnel

12

files of former employees. Therefore, where as here, the plaintiff's request appears to be for documents not covered by the statute, his claim fails. Moreover, rights to statutory penalties under 29 U.S.C. §1132(c)(1) are contingent upon a showing the administrator acted in bad faith by failing or refusing to supply the plaintiff with plan documents. Because the defendant provided the requested plan documents within 11 days of the plaintiff's initial request, (Doc. No. 1, ¶22, 48), and the other documents (i.e. personnel file and information) are not covered under the statute, there is nothing to demonstrate bad faith, intentional withholding, or prejudice to the plaintiff. *See Romero v. SmithKline Beecham,* 308 F.3d 113, 120 (3d Cir. 2002) (noting proper factors in considering rights to statutory penalties are bad faith or intentional conduct by administrator, length of delay, number of requests by the plaintiff, nature of documents withheld, and prejudice created by the withholding of documents). Accordingly, this claim must fail as well.

## V. **CONCLUSION**

In light of the foregoing, the plaintiff's motion to dismiss will be **GRANTED**. An appropriate order will follow.


                                                    s/ *Malachy E. Mannion*
                                                    **MALACHY E. MANNION**
                                                    **United States District Judge**

**DATED: October 31, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2013 MEMORANDA\13-0033-01.wpd